IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | |
| | ) | |
| vs. | ) | NO. 2:13-cr-111 |
| | ) | 2:21-cv-391 |
| | ) | |
| OSCAR COSME, | ) | |
| | ) | |
| Defendant/Petitioner. | ) | |

## OPINION AND ORDER

In this petition filed under section 2255, Oscar Cosme argues the underlying crime of violence supporting his conviction was a RICO conspiracy, which is no longer a crime of violence (presumably referring to *United States v. Davis*, 139 S. Ct. 2319 (2019)). However, his petition suffers a foursome of problems: it is untimely, barred by appellate waiver, procedurally defaulted, and fails on the merits. Therefore, the section 2255 motion is denied.

### Background

Cosme was involved in a large-scale drug conspiracy (some of his co-defendants were members of the incredibly dangerous Two Six Street Gang), and he was personally involved in an attempted drug-related kidnapping which ultimately resulted in the death of two people. The facts are harrowing.

At some point prior to May 16, 2003, Julio Cartagena stole a shipment of cocaine

from Jesus Fuentes (Cosme's co-defendant). [DE 618, Change of Plea transcript, at 35.] Fuentes had been fronted the cocaine from a Mexican drug cartel. *Id.* Fuentes enlisted the help of his associates, including Cosme, to try to retrieve the cocaine, get the money back, and get Cartagena himself. *Id.*

On May 16, 2003, Fuentes' associates learned where Cartagena would be. *Id.* On that day, Cosme, along with defendants Tancil and Pennington (and an individual named Henderson who was not charged because he died just after the botched kidnapping), drove in a black Crown Victoria which appeared to be an undercover police car replete with police lights, a bunch of weapons, ammunition, masks, blue jackets that looked like raid jackets that said "ATF" or "police" on them, and they went to intercept and seize Cartagena. [*Id.* at 36.] Cosme knew that Henderson and Fuentes were members of the Two Six gang. [*Id.* at 38-39.]

When they arrived at the location off of Columbus Drive in East Chicago, Indiana, Cosme and the others jumped out of the car. [*Id.* at 36.] They attempted to seize Cartagena, but he was armed with a .30 caliber gun (he may or may not have gotten off a shot), and gunfire from multiple weapons (including Cosme's weapon) ensued. *Id.* Cartagena was ultimately shot and killed. *Id.* Cosme and the others got back in the car and fled. *Id.* During the chaos, as they were being chased by squad cars, they got into an accident and Henderson (the driver of the vehicle Cosme was in) died on the scene. [*Id.* at 36-37.]

The second superseding indictment in this case charged Cosme and 7 other co-

defendants with numerous charges. [DE 87.] But Cosme himself was only charged with Count 2 and Count 6 (the count to which he pleaded guilty). *Id.* Count 2 charged Cosme and other co-defendants with conspiracy to possess with intent to distribute and distribute marijuana, cocaine, cocaine base, heroin, and MDMA. [*Id.* at 17.] Count 6 charged Cosme and two co-defendants with committing a murder resulting from the use and carrying of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) and 924(j), and 18 U.S.C. § 2. [*Id.* at 22.]

Cosme pleaded guilty to Count 6 pursuant to a plea agreement. [DE 119.] The plea agreement contained an express waiver of Cosme's right to file a section 2255 motion. Here's what it said:

> I understand that the law gives a convicted person the right to appeal the conviction and the sentence imposed. I also understand that no one can predict the precise sentence that will be imposed, and that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offenses as set forth in this plea agreement. With this understanding and in consideration of the government's entry into this plea agreement, I expressly waive my right to appeal or to contest my conviction and my sentence, or the manner in which my conviction or my sentence was determined or imposed, to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to the negotiation of this plea agreement, including any appeal under Title 18, United States Code, Section 3742 or any post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255.

[*Id.* at 4.] In exchange for the guilty plea, the government agreed to dismiss Count 2 (the drug conspiracy count). [*Id.* at 5.] The parties also agreed to a binding 30-year cap on Cosme's sentence (in other words, they agreed that his incarceration would not

exceed 360 months). [*Id.* at 4.]

During the change of plea hearing held before me on October 17, 2014, Cosme was directly questioned about his appeal waiver, and Cosme indicated he understood that he was waiving his appeal rights. [DE 618 at 15-17.] I reinforced that "[t]hese are important rights that you're giving up, so let me ask you: Are you giving up your right to appeal and your right to later file one of those petitions are you doing that knowingly and voluntarily?" [*Id.* at 17.] The "petitions" I was referring to were petitions filed under § 2255. Cosme replied that he understood he was giving up his right to file such a petition. *Id.*

During the plea colloquy, I also very carefully described the charges against Cosme in Count 6:

> Let's just for a minute here talk about Count Six of the Indictment, that's the count that you're pleading guilty to. Count Six charges you with the crime of using, carrying, or discharging – and discharging a firearm during and in relation to a crime of violence or a drug trafficking crime. Those underlying crimes of violence were a racketeering conspiracy, as detailed in Count One of the Indictment, and Count Three in the Indictment, which is murder in aid of racketeering activity. And the underlying drug trafficking crime that the gun was used or carried or discharged is conspiracy to possess with the intent to distribute drugs as set forth in Count Two of the Second Superseding Indictment as well as, again, the racketeering conspiracy.

[*Id.* at 22-23.] When asked if he understood the count to which he was pleading guilty, Cosme replied affirmatively. [*Id.* at 23.]

I also read Cosme the elements that the government would have to prove if this case had gone to trial, and he indicated that he understood them:

4

> First, that you or one of your co-defendants knowingly carried, used, or discharged a firearm; second, that at the time that those events took place, knowingly carried, used, and discharged a firearm, it was done during and in relation to a crime of violence, in this case, the racketeering conspiracy alleged in Count One of the Second Superseding Indictment or the murder in aid of racketeering as set forth in Count Three of the Second Superseding Indictment or that it was used, carried, and discharged during and in relation to the drug conspiracy that's set forth in Count Two of the Second Superseding Indictment; third, that in the process of using, carrying, or discharging a firearm, the death of another person was caused through that use; and fourth, that the killing was, in fact, a murder as defined by the federal code as being a murder that was done with malice aforethought and was done willfully, deliberately, and maliciously.

[*Id.* at 24-25.] Cosme replied that he understood the elements, and ultimately, I accepted the plea. *Id.*

On January 27, 2017, I sentenced Cosme to 216 months on Count 6. [DE 419.] I also ordered supervised release of 2 years. *Id.* I then dismissed the remaining count (Count 2) and issued a final judgment on January 30, 2017. [DE 420, 423.] Cosme did not file a direct appeal.

Cosme filed his section 2255 motion on December 17, 2021. [DE 744.] He argues that a RICO "Conspiracy does not have the use of violent force as an element, so it can no longer qualify categorically as a crime of violence under 18 U.S.C. 924(c). For a 924(c) conviction to stand it must be attached to either a crime of violence, or a Drug Crime. Therefore, since RICO no longer qualifies categorically as a crime of violence, my 924(c) and 924(j) convictions must be vacated." [DE 744 at 4.]

5

**Discussion**

Habeas corpus relief under 28 U.S.C. section 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). In order to proceed on a habeas corpus petition pursuant to section 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *Id.*

In assessing Cosme's motion, I am mindful of the well-settled principle that, when interpreting a pro se petitioner's complaint or section 2255 motion, district courts have a "special responsibility" to construe such pleadings liberally. *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996). On the other hand, "a district court should not 'assume the role of advocate for the pro se litigant' and may 'not rewrite a petition to include claims that were never presented.'" *Riley v. United States*, No. 2:05-cv-380, 2006 WL 2849721, at *2 (N.D. Ind. Sept. 28, 2006) (quoting *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999)).

**I.  Timeliness**

Section 2255 has a one-year limitation period that begins to run the "latest of" four dates:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

6

> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). As noted above, Cosme's judgment was issued on January 30, 2017. [DE 423.] His judgment became final when Cosme did not file an appeal by February 13, 2017 (14 days after judgment was entered). Fed. R. App. P. 4(b)(1)(A)(i). Cosme's motion is therefore filed almost 4 years late.

On the issue of timeliness, Cosme can only prevail if one of the other statutory sections apply. He does not directly address this issue. Presumably, his claim would be based upon the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). In *Davis*, the Supreme Court held that the residual clause's definition of "crime of violence" in § 924(c)(3)(B) is void for vagueness. *Id.* at 2336. Although the application of *Davis* does not save Cosme's claims (as explained later in this opinion), in just looking at the timeliness issue, because *Davis* was decided in 2019 – 2 years *before* Cosme filed his 2255 petition, that decision doesn't render his motion timely. Under 28 U.S.C. § 2255(f)(3), Cosme's motion would have been due one year after the date the Supreme Court initially recognized the right. Because Cosme filed this motion in December 2021, even considering *Davis*, it is still late.

I note that Cosme does not argue that the deadline to toll his section 2255 motion should be equitably tolled. The Seventh Circuit has explained that "the threshold

7

necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000). Cosme has not showed that he has been pursuing his rights diligently and that some extraordinary circumstances stood in his way and prevented timely filing. *Id.*

For all of these reasons, Cosme's section 2255 petition is time-barred. While I could certainly stop my analysis here, for the sake of completeness, I will briefly explain why the motion is also barred by his appellate waiver, procedurally defaulted, and fails on the merits.

## II.     Appellate Waiver

Generally speaking, "[i]t is well-settled in this Circuit, as well as in virtually every circuit that has considered the question, that defendants may waive their right to appeal as part of a written plea agreement." *United States v. Woolley*, 123 F.3d 627, 631 (7th Cir. 1997). A waiver of the right to collaterally attack a sentence is enforceable as long as it is made knowingly and voluntarily, and is not the result of ineffective assistance of counsel. *Dowell v. United States*, 694 F.3d 898, 902 (7th Cir. 2012). As I covered earlier in this opinion, during the change of plea hearing, I extensively reviewed the wavier, and Cosme agreed that he understood it, and that his plea was made knowingly and voluntarily. Cosme has not asserted that he was provided ineffective assistance of counsel.

The Seventh Circuit has "recognized only a few narrow and rare grounds for not enforcing a voluntary and effectively-counseled waiver of direct appeal or collateral

8

review." *Oliver v. United States*, 951 F.3d 841, 844 (7th Cir. 2020) (internal quotations omitted). "For instance: if a district court granted relief on a constitutionally impermissible factor like race or gender; if the sentence exceeded the statutory maximum; or if the proceedings lacked a minimum of civilized procedure." *Id.* Cosme has not satisfied (or even argued) any of these bases for avoiding a valid collateral-attack waiver.

Moreover, directly on point to this situation, the Seventh Circuit has reaffirmed its line of caselaw holding that a defendant like Cosme who entered into a plea agreement with a waiver cannot later argue on collateral review that his underlying "crime of violence" no longer qualifies after *Davis*. *See Oliver v. United States*, 951 F.3d 841, 844-45 (7th Cir. 2020) (holding two defendants who agreed to the same waivers as Cosme and similarly argued their predicate crime for violence for a section 924(c) conviction no longer qualified after *Davis*, were barred by their waivers); *see also United States v. Mitchell*, 657 F. App'x 605, 606 (7th Cir. 2016); *United States v. Carson*, 855 F.3d 828, 830-31 (7th Cir. 2017); *United States v. Wheeler*, 857 F.3d 742, 744-45 (7th Cir. 2017); *Davila v. United States*, 843 F.3d 729, 731-32 (7th Cir. 2016) (all finding defendant waived his right to challenge whether his predicate crime of violence qualified only under the residual clause).

As such, Cosme's appellate waiver in his plea agreement prevents this collateral attack.

9

### III. Procedural Default

The government also argues that Cosme cannot seek relief under section 2255 because he procedurally defaulted on his claim by not raising it on direct appeal. I dealt with this same argument (as well as others in Cosme's motion), in the analogous case of *Reyes v. United States*, No. 2:20CV109-PPS, 2020 WL 4194147 (N.D. Ind. July 21, 2020). In that case, by the time of Reyes' sentencing, the Seventh Circuit had already held that the residual clause of section 924(c) was unconstitutionally vague. *Id.* at *2; *see United States v. Cardena*, 842 F.3d 959, 995-96 (7th Cir. 2016). Section 2255 cannot be employed as a substitute for a direct appeal. *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009). "Any claim that could have been raised originally in the trial court and then on direct appeal that is raised for the first time on collateral review is procedurally defaulted." *Delatorre v. United States*, 847 F.3d 837, 843 (7th Cir. 2017).

Like *Reyes*, Cosme makes no effort to demonstrate cause and prejudice to overcome a procedural bar, or that a failure to consider the defaulted claim will result in a fundamental miscarriage of justice. *Reyes*, 2020 WL 4194147, at *2. Although Cosme claims in his reply that case law precluded him from raising this ground on appeal, his contention is not accurate. [DE 749 at 2.] By the time of Cosme's sentencing, the Seventh Circuit had already held that the residual clause of section 924(c) was unconstitutionally vague. *Cardena*, 842 F.3d at 995-96. Therefore, procedural default provides yet another basis to deny Cosme's section 2255 motion.

10

**IV.      The Merits**

Finally, even if I were to reach the merits in this case, Cosme's claim still fails. He contends that the underlying crime of violence supporting his section 924(c) and 924(j) conviction was the RICO conspiracy, which is no longer a crime of violence after *Davis*. [DE 744 at 4; DE 749 at 1.]  But that only tells half the story.

Cosme caused the death of Julio Cartagena with the use of a firearm during the botched kidnapping.  Cosme and his associates were in a black Crown Victoria car that was dressed up to look like an undercover police car. [DE 618 at 36.]  They were armed with multiple weapons, a shotgun, a few pistols, and they had additional ammunition, masks, and blue jackets that said "ATF" or "police" on them in the car.  *Id.*  Cosme had a pistol.  *Id.*  They knew where Cartagena was supposed to be, and when they jumped out of the car and attempted to grab Cartagena, they realized he was armed as well.  *Id.* Shots were fired from multiple weapons, including Cosme's weapon, and Cartagena was shot and killed.  *Id.*

As spelled out in Count 6 of the second superseding indictment, Cosme was charged with knowingly discharging a firearm (and causing Cartagena's death) during and in relation to two crimes of violence: the RICO conspiracy as set forth in Count 1 *and* during and in relation to a VICAR.  What's more, Cosme was also charged in Count 6 with discharging the firearm during and in relation to a drug trafficking crime, the drug conspiracy charged in Count 2 of the indictment.  So there were multiple ways that Cosme could be found guilty of Count 6.  In other words, even if the RICO

11

conspiracy is not a crime of violence, Cosme still possessed a firearm during and in relation to a VICAR murder and a drug conspiracy, and both of those offenses are qualifying predicate offenses for liability under §§ 924(c) and (j).

I have already found that a conviction for a VICAR murder, like Cosme committed in this case, is a crime of violence under the elements clause. *Reyes*, 2020 WL 4194147, at *3. For the reasons articulated in *Reyes*, Cosme's assistance in the VICAR murder provides the necessary predicate crime of violence for the section 924(j) conviction.

In addition, Cosme pleaded guilty to sufficient facts to show that the murder was in furtherance of a drug trafficking conspiracy as well. Cosme knew that Fuentes was a Two Six gang member who was involved in large-scale drug dealing. [DE 618 at 39.] He also understood that Cartagena had stolen something of significant value from Fuentes. *Id.* And, during the plea colloquy, Cosme said he knew Henderson and Fuentes wanted to get their hands on Cartagena to get him to take them to where the "stuff" was located. [*Id.* at 40.] Cosme admitted he knew the debt was for something unlawful and he "wasn't going under the assumption it was due to any legitimate activity." [*Id.* at 34.] Cosme also stated that after Cartagena fired first, he returned fire. [*Id.* at 32.] There was a sufficient factual basis to establish that Cosme aided and abetted the drug conspiracy by attempting to regain what he either knew or should have known was narcotics and/or drug money, and that Cosme ultimately discharged a weapon in furtherance of that conspiracy. *See, e.g., United States v. Hosseini*, 679 F.3d

544, 559-60 (7th Cir. 2012) (finding even though defendant never personally purchased or sold drugs, that the evidence was sufficient that he aided and abetted a drug-distribution conspiracy).

For all of these grounds, Cosme's motion under § 2255 is denied.

\* \* \*

Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue only if the applicant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a defendant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 475 (U.S. 2000) (internal quotation marks and citation omitted).

For the reasons set forth above, Cosme has not stated any grounds for relief under section 2255. The Court finds no basis for a determination that reasonable jurists would find this decision debatable or incorrect or that the issues deserve encouragement to proceed further. Therefore, a certificate of appealability will not be issued. 28 U.S.C. § 2253(c)(2); *Welch v. United States*, 136 S. Ct. 1257, 1263-64 (2016). If Cosme wishes to appeal this Opinion and Order, he must seek a certificate of appealability from the Court of Appeals under Federal Rule of Appellate Procedure

Rule 22.

## Conclusion

For the foregoing reasons, Cosme's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [DE 744] is **DENIED**, and a certificate of appealability is also **DENIED**. The Clerk shall enter judgment against Cosme and in favor of the United States in the civil case opened on the § 2255, Cause No. 2:21-cv-391.

SO ORDERED.

ENTERED: April 6, 2022.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT